UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:15-cv-00098-JHM

PHILMO, INC.                                                                    PLAINTIFF

V.

CHECKER FOOD HOLDING COMPANY                                      DEFENDANTS
d/b/a CHECKER BAG COMPANY and
CHECKER FOOD PRODUCTS COMPANY

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss or Transfer [DN 17]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

I. BACKGROUND

Plaintiff is in the business of manufacturing adhesive tape, including duct tape, with specialty printed designs. (Pl.'s Compl. [DN 1] ¶ 2.) Plaintiff is a Kentucky corporation, with its principal place of business in Kentucky as well. (Id. ¶ 1.) Defendants specialize in printing and is a Missouri company with its principal place of business also in Missouri. (Id. ¶ 3.) In 2010, Plaintiff needed to find a company that could produce a sufficient amount of film for Plaintiff to use in order to create specially printed tape with the designs requested by Plaintiff's customer, 3M Company. (Pl.'s Resp. [DN 18] at 1.) Plaintiff then contacted Brentwood Plastics (hereinafter "Brentwood"), a Missouri corporation, with whom Plaintiff had a longstanding contractual relationship. (Id.; Def.'s Mem. Supp. Mot. Summ. J. [DN 17-1] at 2.) Brentwood then put Plaintiff in contact with Defendant. (Def.'s Mem. Supp. Mot. Summ. J. [DN 17-1] at 2.) Plaintiff negotiated a contract with Defendants, in which Defendants would receive film from Brentwood in Missouri and print designs on the Brentwood film. (Pl.'s Resp. [DN 18] at 1.)

Once printing was complete, Defendants would ship the printed film via a third-party carrier from Missouri to Kentucky or Plaintiff would pick up the film in Missouri and transport it to Kentucky. (Def.'s Mem. Supp. Mot. Summ. J. [DN 17-1] at 3.) Upon arrival, Plaintiff would use it to manufacture the adhesive tape for Plaintiff's customers, namely 3M Company. (Id.)

Throughout the course of the contractual relationship, Defendants shipped samples to Plaintiff's customers, mostly 3M Company of Minneapolis, and received large sums of money from Plaintiffs—over $1,500,000 in payment for the printing. (Id. at 2.) However, Plaintiff purportedly began receiving "defective and/or nonconforming film that was missing color in places, was faded, had areas of shadowing, or had black, orange or yellow spots running through the designs." (Id. at 2.) The defectively printed film is currently being held at Plaintiff's plant in Kentucky and is unusable. (Id.) When Plaintiff discovered the defects, Plaintiff and Defendants attempted to resolve their disagreements without resorting to litigation; but, when those negotiations broke down, Plaintiff filed suit to recover for breach of express warranty, nonconformity of goods, breach of implied warranty, and negligence. (Id.)

Defendants now ask this Court to dismiss the action based on lack of proper venue or, alternatively, to transfer the matter to Missouri. Plaintiff argues that the Western District of Kentucky is a proper venue under Kentucky's long-arm statute and that Kentucky is just as a good of a venue as Missouri, rendering transfer inappropriate.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."[1] An entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in

---

[1] The parties do not argue that 28 U.S.C. § 1391(b)(2) or 28 U.S.C.§ 1391(b)(3) could give rise to proper venue.

question." 28 U.S.C. § 1391(c)(2).  Therefore, this Court must have personal jurisdiction over an entity in order for venue to be proper in Kentucky.  "In a diversity case, a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits." Third Nat. Bank in Nashville v. WEDGE Grp. Inc., 882 F.2d 1087, 1089 (6th Cir. 1989) (citing American Greetings Corp. v. Cohn, 839 F.2d 1164, 1167 (6th Cir.1988); see also First Nat. Bank of Louisville v. J. W. Brewer Tire Co., 680 F.2d 1123, 1125 (6th Cir. 1982).

Kentucky's long-arm statute permits Kentucky courts to exercise personal jurisdiction over certain nonresident defendants.  Churchill Downs, Inc. v. NLR Entm't, LLC, No. 3:14-CV-166-H, 2014 WL 2200674, at *5 (W.D. Ky. May 27, 2014) (citing KRS § 454.210).  However, "the Kentucky Supreme Court [has] clarified that this statute is not co-extensive with federal due process." Id. (citing Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 56 (Ky. 2011)). A plaintiff's claims must instead "meet one of the nine explicit categories of the long-arm statute, even if federal due process would otherwise permit personal jurisdiction." Id.  In order to assert personal jurisdiction over a defendant under the Kentucky long-arm statute, a plaintiff must show: "(1) [the defendant's] conduct falls under a statutory category identified in KRS § 454.210(2)(a), and (2) [the plaintiff's] claim 'arises from' that statutory provision." Id. (citing Caesars, 336 S.W.3d at 58).  Under the second prong, "[a] claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." Id. (citing Caesars, 336 S.W.3d at 59).

### III. DISCUSSION

Here, Plaintiff asserts that Defendants were "transacting business" in the Commonwealth of Kentucky under KRS § 454.210(2)(a)(1) and that Plaintiff's claim arises from Defendants'

business transactions. Defendants argue that the Court does not have personal jurisdiction under Kentucky's long-arm statute and request that Plaintiff's Complaint be dismissed.

"[T]he key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." Spectrum Scan, LLC v. AGM CA, No. 3:07 CV 72 H, 2007 WL 2258860, at *3 (W.D. Ky. Aug. 2, 2007) (emphasis in original). "The process of analyzing personal jurisdiction is not a mechanical one and each case must be analyzed on its individual merits." Id. (citing In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 225–26 (6th Cir. 1972)); see Caesars, 336 S.W.3d at 59 ("[N]o general rule can be expressed to take into account the unlimited factual possibilities that can arise, and the analysis must necessarily be undertaken on a case by case basis."). The Court must keep in mind that, "a contract with a Kentucky company [does] not alone support the exercise of jurisdiction over a nonresident [d]efendant under KRS 454.210(2)(a)(1)." Churchill Downs, 2014 WL 2200674, at *6 (citing Spectrum Scan, 2007 WL 2258860, at *2–3); see also Calphalon Corp. v. Rowlette, 228 F .3d 718, 722 (6th Cir. 2000) ("[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction over [a non-resident defendant]").

Because the Kentucky long-arm statute is not coterminous with federal due process, many courts interpreting the statute have declined to find that certain defendants with attenuated contacts with Kentucky were "transacting business" in the Commonwealth. For example, in Spectrum Scan, a Kentucky corporation entered into a contract to perform services for a partnership located in California. Spectrum Scan, 2007 WL 2258860, at *1. The Court declined to exercise personal jurisdiction over the California defendant, as the defendant did not initiate contact with the plaintiff, neither the contract's negotiations nor its execution took place in Kentucky, the subject matter of the contract was outside Kentucky, and the contract did not

4

waive personal jurisdiction.  Id. at *2.  Similarly, in Envirometric Process Controls, a Kentucky corporation subcontracted with a Tennessee corporation for the Tennessee corporation to provide services in Tennessee.  Envirometric Process Controls, Inc. v. Adman Electric, Inc., 3:12CV-62-S, 2012 WL 4023789, at *2 (W.D. Ky. Sept. 12, 2012).  The court found that the Tennessee defendant did not establish sufficient contacts because the defendant was not licensed to do business in Kentucky, had no physical presence in Kentucky, and its performance of its contract obligations did not occur in Kentucky.  Id.  Even though the defendant contacted the plaintiff and negotiated the contract over the phone and via email, the court found these activities insufficient for "transacting business" under KRS § 454.210.  Id. at *2–3.  Additionally, in Churchill Downs, the plaintiff, a Delaware corporation with a principal place of business in Kentucky, entered into a contract with the defendant, a Delaware corporation with a principal place of business in New Jersey.  2014 WL 2200674, at *1.  The plaintiff was to develop an online gaming system for the defendant's casino boat.  Id.  Even though performance took place over a number of years and for a substantial sum, the court found that the defendant was not "transacting business" in Kentucky, as the defendant did not solicit business from plaintiff, plaintiff's in-house counsel led contract negotiations, and performance of the contract took place in Kentucky.  Id. at *6.

On the other hand, in Caesars, the seminal decision defining "transacting business" under Kentucky's long-arm statute, the plaintiff fell on the defendant's casino boat docked in Indiana. 336 S.W.3d at 53.  Though the injury occurred outside the state and the defendant maintained no physical presence in Kentucky, the defendant engaged in mass media and billboard advertising in Kentucky, sent direct mail advertising to Kentucky residents, offered preferred customer incentives directed to Kentucky residents, derived substantial revenue from Kentucky citizens, and was involved in extensive civic and charitable activities in the Commonwealth.  Id. at 53,

57–58.  The Court found that these extensive activities were sufficient to constitute "transacting business" in Kentucky.  Id. at 58.

Here, Defendants' connection to Kentucky is more akin to the defendants' contacts in Spectrum Scan, Envirometric Process Controls, and Churchill Downs than the defendant's in Caesars.  Plaintiff originally contacted Brentwood, a film supplier located in the St. Louis area, inquiring as to whether Brentwood knew of anyone able to print custom designs on the film that Brentwood supplies to Plaintiff.  (Pl.'s Resp. [DN 18] at 1.)  Brentwood then put Plaintiff in contact with Defendant.  (Def.'s Mem. Supp. Mot. Summ. J. [DN 17-1] at 2.) Plaintiff and Defendants came to an oral agreement whereby Defendants would print the images in Missouri on film provided by Brentwood and either send the printed film to Plaintiff in Kentucky via a third-party carrier or allow Plaintiff to pick up the printed film in Missouri. (Id. at 2–3.) Defendants received film from Brentwood located in Missouri, printed on the film in Missouri, and held meetings with Plaintiff at its facility in Missouri regarding any relevant printing issues. (Id. at 3.)  Defendants sent quality control samples to Plaintiff's end customer (3M Company) in the Minneapolis area and 3M Company representatives would visit Defendants' plant to review the printing process in Missouri.  (Id.)  Defendants' agents never sent representatives to, held meetings in, or stepped foot in Kentucky during the course of the contractual relationship.  (Id.) Further, Defendants have no other contracts with Kentucky corporations and have no physical operations in Kentucky.  (Id.)

Taking these facts into account, the only contacts that Defendants had with the Commonwealth were: 1) entering into an oral contract with Plaintiff, 2) shipping printed film via a third-party carrier to Kentucky or allowing Plaintiff to pick up printed film from Missouri and transport it into Kentucky, and 3) receiving large sums of money from Plaintiff as payment for

printing.  Defendants neither sought out business in Kentucky, nor did they perform any part of the contract in Kentucky.  It is worth repeating that "the key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff."  Spectrum Scan, 2007 WL 2258860, at *3 (emphasis in original).   And, here, Defendants' actions do not amount to "transacting business" in Kentucky; therefore, this Court cannot exercise personal jurisdiction over Defendants.   Accordingly, the venue is improper and the Court must grant Defendants' Motion to Dismiss for lack of proper venue.[2]

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Transfer is **GRANTED**.


**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 21, 2016

cc: counsel of record

---

[2] The Court will not consider Defendants' alternative Motion to Transfer first because their principal Motion to Dismiss has been granted, but also because "a transfer based on convenience under [28 U.S.C.] § 1404(a) applies only where the transferor court holds both proper venue and personal jurisdiction," which this Court has determined it does not have."  Sechel Holdings, Inc. v. Clapp, No. 3:12-CV-00108-H, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012) (citing Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)).